IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KENNETH R. MARTIN, ) | |
| ) | |
| Plaintiff, ) | Case No. CV04-39-N-EJL |
| ) | |
| vs. ) | MEMORANDUM ORDER |
| ) | |
| SCHOOL DISTRICT NO. 394, et al, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiff Kenneth Martin brings this action against Defendants School District No. 394, Robert Singleton, in his capacity as Superintendent of the district, and the Board Members of School District No. 394, claiming breach of contract, wrongful discharge and violation of federal due process, all based on the termination of his employment. Defendants moved for summary judgment on Plaintiff's claims and for reconsideration of the state court's denial of motion for summary judgment. (Docket No. 13). Plaintiff opposes the motion. The issues have been fully briefed and are ripe for the Court's consideration.

Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this motion shall be decided on the record before this Court without a hearing.

MEMORANDUM ORDER - Page 1
05ORDERS\Martin04-39_SJ.WPD

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff was hired by Defendant School District No. 394 in or about September 1988 as a teacher at Calder Elementary School. (Docket No. 24, p. 2, ¶2). In the fall of 1990, Plaintiff was transferred to Avery Elementary School, where he taught until his employment was terminated. From the early 1990s to the time of his discharge, Plaintiff was entitled to renewable annual employment contracts. (Id. at ¶4.) During the 1997-1998 school year, Plaintiff was responsible for ensuring that students' Iowa Basic Test scores were included in their school record, which included the students' transcripts. (Docket No. 24, p. 3, ¶9).

In the fall of 1997, Plaintiff discovered a sexually explicit e-mail message sent to another teacher on an Avery Elementary School computer and reported the message to Defendant Robert Singleton. (Docket No. 24, p. 2, ¶8; Docket No. 15, p. 2). In or about February 1998, Plaintiff noticed a letter addressed to the school and, "recognized it as a transcript letter." (Docket No. 24, p. 3, ¶10). According to his affidavit, Plaintiff believed his position as the employee responsible for including Iowa Basic Test scores with students' transcripts required him to review the letter. (Id. at ¶11.)

These incidents prompted Superintendent Singleton to send a letter, dated February 18, 1998, to Plaintiff discussing Singleton's concerns about possible privacy and confidentiality violations. (Docket No. 15, p. 2). The letter contained a "directive" to Plaintiff to "follow appropriate conduct regarding privacy and confidentiality. . ." and to "consider issues of privacy, confidentiality, and appropriateness of [his] actions. . ." (Id.) The parties agree that at least one conversation about these issues occurred between Singleton and Plaintiff after Plaintiff received the February 18 letter.

Their views diverge, however, in regard to other conversations about confidentiality and student supervision issues. Defendants allege Singleton met with Plaintiff "on a number of occasions" after Singleton received complaints from parents in connection with Plaintiff's presence in- and outside his classroom and discussing particular students with individuals "other than the child's parents." (Docket No. 15, p. 2). Plaintiff, on the other hand, denies that such "numerous" conversations ever took place. (Docket No. 24, p. 4, ¶13).

In June 1998, Plaintiff and the school district entered into a Teacher's Standard Contract for the 1998-1999 school year. (Id. at ¶14). On June 8, 1998, Defendants School Board Members held their monthly meeting and, in an executive session, discussed Plaintiff and areas of his work performance relating to the above-described incidents and his supervision of students. (Docket No. 16, p. 37-38). As a result of these concerns, Singleton recommended to the Board that Plaintiff be put on probation. (Docket No. 16, p. 13).

Following this meeting, Singleton drafted a letter notifying Plaintiff of his placement on "formal probation." (Docket No. 24, p. 22). The letter addresses the issues of "Confidentiality" and "leaving students unsupervised" and sets forth specific incidents forming the bases of such concerns. The letter also explains that "significant improvement" is expected in these areas, and that, at the end of the probation period, the Board had several options regarding Plaintiff's continued employment, including termination. (Id.) This letter is a major point of contention between the parties. While Defendants maintain the letter was delivered to the post office, properly stamped, and placed in Plaintiff's P.O. Box (docket No. 18, p. 2), Plaintiff contends he never received the letter and saw it for the first time in April 1999, (docket No. 24, p. 4, ¶15).

The parties dispute several events during the fall of 1998. Specifically, Defendants allege that on the first or second day of the 1998-1999 school year, Plaintiff called Sheila Cottier, Clerk of the School Board, into his classroom to discuss the June 8 board meeting and the reasons he was placed on probation. (Docket No. 15, p. 5). Plaintiff denies calling Cottier into his classroom, discussing the meeting or his probation with her. (Docket No. 24, p. 6, ¶21). Moreover, Defendants claim Singleton met with Plaintiff on "several occasions to discuss his probation, problems with his work performance and to offer help in succeeding in his probation." (Docket No. 15, p. 5). Plaintiff denies "several" meetings took place and claims "probation was never mentioned." (Docket No. 24, p. 5, ¶18). The parties agree, however, that at least one meeting took place in the fall of 1998. Several aspects of this meeting are disputed[1], but it is agreed that the subject of this conversation

---

[1] For instance, when it occurred–shortly before or after the commencement of the 1998-1999 school year; whether Plaintiff's probation status was discussed; whether Singleton provided Plaintiff with a list–either handwritten or typed–of concerns; whether these concerns were directed solely at Plaintiff or were general problem areas regarding the school as an entity; and the source of concern–Board members or parents.

was the concern discussed at the June 8, 1998 board meeting. (Docket No. 24, p. 5, ¶18; Docket No. 14, p. 5). Furthermore, it is undisputed that Plaintiff prepared written responses to ten such issues as a result of this meeting[2].

In October 1998, Singleton learned that Plaintiff left his classroom unattended on at least two occasions and, as a result, sent Plaintiff a letter dated October 1. This letter continued Plaintiff's probation status "indefinitely." The letter references the above-described meeting between Singleton and Plaintiff and explains that any further "offense will result in suspension and a hearing before the Board to consider termination." At the close of the letter, Plaintiff is directed to "contact [Singleton] and set up a time to discuss these issues." Plaintiff does not dispute receiving this letter. (Docket No. 24, p. 6, ¶22).

On April 13, 1999, Singleton notified Plaintiff that he was not "satisfactorily meeting his probation requirements." (Docket No. 14, p. 6). A typed note initialed by Singleton indicates Singleton explained to Plaintiff that his failure to follow "directives" constituted an "act of insubordination," requiring Plaintiff's "suspension, with pay, pending a hearing before the School Board Trustees." Defendants allege that Plaintiff was placed on suspension as of that meeting. (Docket No. 14, no. 7). Plaintiff maintains that Singleton told him the board decided to "either" seek his resignation "or to suspend [him] without pay, pending the outcome of a hearing." (Docket No. 24, p. 8, ¶31; p. 10, ¶37).

Plaintiff's discharge hearing was held May 26, 1999. The transcript of that hearing indicates that Plaintiff was represented by counsel, witnesses testified and were cross-examined, and the board members underwent a voir dire process to ensure impartiality. (Docket No. 16, p. 53-87). Following this hearing, the Board terminated Plaintiff's employment, effective June 25, 1999. (Docket No. 16, p. 93).

On December 6, 2000, Plaintiff filed a Breach of Contract/Wrongful Discharge action in state district court. In January 2002, Defendants filed a motion for summary judgment, which was eventually denied in late December 2003. In the meantime, on February 10, 2003, Plaintiff filed a

---

[2] The ten issues included: teaching Idaho history the previous year; color and draw time; time out of the classroom; long recess periods; requiring students to sit in the hallway during lunch; shyster name calling; finger pointing; meeting people who enter the building; use of the phone during school time; no flag salute.

MEMORANDUM ORDER - Page 4
05ORDERS\Martin04-39_SJ.WPD

motion to amend his initial complaint, which was granted. In January 2004, Plaintiff filed his Amended Complaint and Demand for Jury Trial, claiming violations of the Idaho Code, the Due Process Clause of the 14th Amendment and 42 U.S.C. § 1983. Thereafter, Defendants removed the action to federal court.

On October 15, 2004, Defendants filed the instant motion for summary judgment and reconsideration of the state court's denial of summary judgment alleging: 1) Plaintiff's § 1983 claim is barred by Idaho's two-year statute of limitations on personal injury actions; 2) Defendants provided Plaintiff with adequate notice of his probation status in compliance with state and federal law; 3) Defendants did not violate district policies relating to written complaint procedures because school district patrons, not district employees, submitted oral complaints; 4) Defendants lacked any contractual obligation to protect Plaintiff's interests; 5) Plaintiff's termination was just and reasonable; and 6) Plaintiff received procedural due process in the discharge proceedings in compliance with federal law. In response, Plaintiff argues: 1) the § 1983 claim relates back to the date of the original complaint and is thus not barred by the statue of limitations; and 2) genuine issues of material fact exist in regard to Defendants' remaining contentions regarding state law and federal due process.

## STANDARD OF REVIEW

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial. See Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986).

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine." An issue is "material" if it affects the outcome

of the litigation. A "genuine" issue is established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975) (quoting First Nat'l Bank v. Cities Serv. Co. Inc., 391 U.S. 253, 289 (1968)). The Ninth Circuit cases are in accord. See, e.g., British Motor Car Distrib. v. San Francisco Automotive Indus. Welfare Fund, 882 F.2d 371 (9th Cir. 1989). In order to withstand a motion for summary judgment, a party must:

> 1) make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; 2) show that there is an issue that may reasonably be resolved in favor of either party; and 3) come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

Id. at 374 (citation omitted).

Of course, when applying the above standard, the court must view all of the evidence in a light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Hughes v. United States, 953 F.2d 531, 541 (9th Cir. 1992).

## ANALYSIS

Defendants seek summary judgment on all claims raised by Plaintiff, including state law and federal due process issues. The Court will first address the federal claims at issue because such ruling may be dispositive of the Court's jurisdiction over Plaintiff's remaining state law claims. See Acri v. Varian Assoc., Inc., 114 F.3d 999, 1001 (9th Cir. 1997).

I.  Statute of Limitations

Section 1983 actions are analogous to actions for injuries to personal rights and therefore subject to the state statute of limitations for personal injury actions. Wilson v. Garcia, 471 U.S. 261, 278 (1985). Thus, 42 U.S.C. § 1983 actions in Idaho must meet the two-year statute of limitations for personal injury actions established by Idaho Code § 5-219(4). Samuel v. Michaud, 980 F. Supp. 1381, 1410 (D. Idaho 1996); see also Henderson v. State, 715 P.2d 978, 981 (Idaho 1986). Section 5-219(4) provides in relevant part, "An action to recover damages . . . for an injury to the person . . ." must be brought "within two (2) years." Idaho Code § 219(4) (2000).

Defendants argue that Plaintiff's § 1983 claim is barred by the two-year statute of limitations because the cause of action was first raised in January 2004, more than four years after Plaintiff's

employment was terminated. Specifically, Defendants assert the § 1983 claim does not relate back to the date of the original Complaint because it constitutes a new cause of action and the original Complaint did not give Defendants notice of the alleged federal due process violation. Plaintiff maintains that an amended pleading relates back to the original pleading's date if the newly-asserted claim arose out of the same underlying facts of the original Complaint and the defendants are aware of the action against them.

If an amended pleading relates back to the date of the original complaint, a new cause of action specified therein can avoid the applicable statute of limitations. Mayle v. Felix, 125 S. Ct. 2562, at *7 (2005). An amended pleading relates back to the original pleading's date when the claim asserted in the amended pleading arose out of the "conduct, transaction or occurrence set forth in the original pleading." Fed. R. Civ. P. 15(c). In determining whether an amended cause of action relates back, the emphasis is not on the new legal theory asserted, but whether the defendant's specific conduct, upon which the plaintiff is relying to enforce the amended claim, is identifiable with the original claim. FDIC v. Jackson, 133 F.3d 694, 701 (9th Cir. 1998). The district court should determine whether the two pleadings share a "common core of operative facts" sufficient to provide defendants with fair notice of the transaction, occurrence, or conduct called into question. Id.

In the instant case, Plaintiff's original Complaint and amended pleading are based on the same core of operative facts, namely, the circumstances leading up to and including the termination of his employment. Plaintiff's § 1983 claim does not introduce new facts of which Defendants were unaware. To the contrary, the § 1983 cause of action relies exclusively on the same conduct and occurrences supporting Plaintiff's state law claims enunciated in the original Complaint. Additionally, the state district court, in granting Plaintiff's motion to amend, implicitly found the § 1983 claim was not barred by the statute of limitations. Because the amended pleading arose out of the same conduct set forth in the original pleading and provided Defendants with fair notice of the occurrences called into question (the circumstances surrounding Plaintiff's discharge), the § 1983 claim relates back to the original Complaint's date and is not barred by Idaho's two-year statute of limitations.

II.     Federal Due Process

A § 1983 claim based upon procedural due process contains two elements: 1) a deprivation of liberty or property interest protected by the Constitution; and 2) a denial of adequate procedural protections. Brewster v. Board of Education of the Lynwood Unified School District, 149 F.2d 971, 982 (9th Cir. 1998). To state a claim under the Due Process Clause, Plaintiff must first establish he possessed a property interest deserving of constitutional protection. Id; see also Gilbert v. Homar, 520 U.S. 924 (1997).

A teacher entitled to renewable employment contracts has a property interest in continued employment protected by procedural due process. Bowler v. Board of Trustees of School District No. 392, Shoshone County, Mullan, 617 P.2d 841, 845. (Idaho 1980). It is undisputed in this case that Plaintiff's right to automatic renewal of his employment contract constitutes a property interest protected by the Constitution. Furthermore, it is undisputed that Plaintiff was deprived of that interest by virtue of his termination. The only issue in this regard, therefore, is whether Plaintiff received adequate procedural protections, as defined by federal law, in the termination process.

The essential requirements of due process are notice and an opportunity to respond. Cleveland Board of Education v. Loudermill et al., 470 U.S. 532, 546 (1985). A pre-termination process need only include oral or written notice of the charges against the employee, an explanation of the employer's evidence, and an opportunity for the employee to present his side of the story. Gilbert v. Homar, 520 U.S. 924, 928 (1997) (citing Loudermill, 470 U.S. at 546). The instant case presents issues relating to Plaintiff's receipt of notice of the charges against him and the termination hearing, both of which are discussed in turn below.

A.      Notice

Defendants maintain that Plaintiff received adequate notice of his placement on probation and possible discharge. In particular, Defendants point to the June 8, 1998 letter describing the basis and duration of Plaintiff's probation, and the October 1, 1998 letter in which Plaintiff's probation is continued "indefinitely." Plaintiff contends the June 8 letter did not provide him with adequate notice of his probation because he never received it. Also, Plaintiff argues the October 1 letter did

not provide him with adequate notice because it did not comply with the mandatory written notice requirements under state law.

The parties dispute the legal rule applicable to the sending and/or receipt of the June 8 letter. Defendants maintain that the letter was sent and, under the "mail box rule" recognized by Idaho common law, such is sufficient for the relevant notice requirements. Plaintiff disputes that the letter was sent and that the mail box rule applies to this case. This Court, however, need not reach the legal question of whether the mail box rule applies in this situation, as sufficient, undisputed facts exist independently of the June 8 letter to meet the notice requirement of federal due process.

First, Plaintiff received a letter dated February 18, 1998 from Singleton discussing a possible confidentiality violation based on the e-mail and transcript letter incidents. Singleton's letter concluded with a directive to Plaintiff to "follow appropriate conduct regarding privacy and confidentiality." While this letter does not discuss probation or termination in any way, it nonetheless provided Plaintiff with notice of possible problems with his work performance. Indeed, the issue of confidentiality eventually became one of the grounds for his dismissal, and this letter gave Plaintiff notice of this issue, and the bases for such, as early as February 1998.

Later, shortly before or after the 1998-1999 school year began, Singleton and Plaintiff met and discussed problem areas brought up in a school board meeting during the summer. While the parties dispute several aspects of this meeting, Plaintiff nonetheless prepared written responses to ten issues identified by Singleton in the meeting. "Time Out of the Classroom" was a specific issue explained by Plaintiff in his response and later became a basis for his termination of employment. Similar to the February 18 letter, Plaintiff's responses indicate he received notice of problem areas in his employment, and evidence supporting such problems, regardless of whether or not his probation and/or termination was discussed in relation to these areas.

Furthermore, Plaintiff does not dispute that he received the October 1, 1998 letter in which his probation was "extended indefinitely." Plaintiff maintains this was the first indication he received of his probation status and the letter does not comport with the probation notice requirement set out under state law. This letter does, however, satisfy the notice element of federal due process. Brewster v. Board of Education of the Lynwood Unified School District, 149 F.3d 971,

986 (9th Cir. 1998)  The letter specifically states the circumstances giving rise to the reprimand and what later became one of the bases for Plaintiff's termination (Plaintiff's time out of his classroom). Also, it alerts Plaintiff to the possibilities of suspension and/or termination.  Moreover, the letter concludes with an invitation to contact Singleton to discuss the problems addressed therein.

Finally, on April 13, 1999, Singleton notified Plaintiff of the hearing (eventually held in May) before the School Board Members to consider Plaintiff's termination of employment.  These undisputed facts establish that Plaintiff received notice of the charges against him forming the basis of his probation and eventual discharge.  The February and October letters describe the evidence supporting the charges and the October letter explicitly provided Plaintiff an opportunity to tell his side of the story, well before the May 1999 hearing.  This notice satisfies the notice requirement essential to adequate constitutional procedural protections and no genuine issue of material fact exists as to its validity.  Brewster, 149 F.3d at 986 (Court found two memoranda alerting discharged teacher to problems with previous employment verification and specifically soliciting his response provided adequate due process.)

B.     Termination Hearing

The opportunity to present reasons why a proposed action should not be taken is a fundamental due process requirement. Loudermill, 470 U.S. at 546.  The parties do not dispute the contents of the hearing itself.  Rather, Plaintiff argues that the hearing was not constitutionally adequate because two board members failed to recuse themselves from the proceedings.  Plaintiff alleges the hearing was not impartial because these members had students in Plaintiff's classroom and they were "complaining witnesses" at the June 8, 1998 school board meeting which allegedly precipitated the June 8, 1998 probation letter.

The key component of due process, when a decision maker is acquainted with the facts, is the assurance of central fairness at the hearing.  Vanelli v. Reynolds School District No. 7, 667 F.2d 773, 779 (9th Cir. 1982).  "Fairness" is a flexible notion, but one must at least be given notice and an opportunity to be heard at a meaningful time and in a meaningful manner.  Id. (Citing Armstrong v. Manzo, 380 U.S. 545, 552 (1965)).  Policymakers with decision-making power enjoy a presumption of honesty and integrity.  Hortonville Joint School Dist. No. 1 v. Hortonville Educ.

MEMORANDUM ORDER - Page 10
05ORDERS\Martin04-39_SJ.WPD

Ass'n, 426 U.S. 482, 497 (1976). Involvement in, or familiarity with, the events preceding the contested decision is insufficient to overcome this presumption. Id. (See also Withrow v. Larken, 421 U.S. 35, 47 (1975)). To rebut the presumption, a party must demonstrate that the tribunal was actually biased. Withrow, 421 U.S. at 47.

In this case, the Hearing Transcript indicates that each board member specifically pledged he or she was able to sit fairly and impartially to determine the question of Plaintiff's continued employment and that such decision would be based on the evidence presented at the hearing. Both members who, Plaintiff contends, should have recused themselves specifically indicated they did not have any complaints against Plaintiff. Indeed, one member explained the "complaint" voiced at the June 8, 1998 meeting was not his own, but passed along to him from a non-board member. Based upon these affirmations, the hearing officer found no "bias or lack of impartiality" among the board members. While the parties dispute the level of knowledge and/or impartiality of some of the board members, Plaintiff, nevertheless, has failed to offer any competent evidence to raise a genuine issue of material fact sufficient to demonstrate the board members' actual bias. Vanelli, 667 F.2d at 780.

### C. Conclusion

While the parties dispute several aspects of this case, the undisputed facts establish that Plaintiff received adequate procedural protections throughout the termination process. Plaintiff fails to provide evidence establishing issues of material fact relating to either his notice of the charges against him or the alleged bias of the school board members. Therefore, summary judgment in favor of Defendants is appropriate as to Plaintiff's federal claims.

Defendants also challenge the viability of Plaintiff's state law claims. The Court's jurisdiction over Plaintiff's state law claims is supplemental in nature. See 28 U.S.C. § 1367(a). Now that Plaintiff's federal claims are to be dismissed, the Court must consider whether it is appropriate to retain supplemental jurisdiction over the state law claims. See 28 U.S.C. § 1376(c)(3). "'[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining

state-law claims.'" Acri v. Varian Assoc., Inc., 114 F.3d 999, 1001 (9th Cir. 1997) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7 (1988)).

Here, Plaintiff's state law claims raise novel and complex issue of Idaho law which the Court finds, as a matter of comity, should be addressed by the state courts. See Holly D. v. Cal. Inst. of Tech., 339 F.3d 1158, 1181 n.28 (9th Cir. 2003). Accordingly, the Court declines to assert jurisdiction over Plaintiff's supplemental state law claims and will remand this action to state court. Id.

## ORDER

Based on the foregoing, and being fully advised in the premises, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Docket No. 13) is **GRANTED** with respect to Plaintiff's federal and § 1983 claims.

**IT IS FURTHER ORDERED** that the Plaintiff's state law claims and the above-entitled action are **REMANDED** to the district court of the First Judicial District of the State of Idaho, In and For the County of Shoshone, No. CV-00-36123 and the Clerk shall mail a certified copy of this Order to the Clerk of the aforesaid Idaho state court.

DATED: **July 14, 2005**

_____
Honorable Edward J. Lodge
U. S. District Judge